IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

SHAWANA K. ROBINSON        )
                           )
v.                         )     No. 3:12-0441
                           )     Magistrate Judge Holmes
CAROLYN W. COLVIN          )
    Acting Commissioner of )
    Social Security        )

**MEMORANDUM**

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for a period of disability and Disability Insurance Benefits ("DIB"), as provided under the Social Security Act ("the Act").[1] The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 14), to which Defendant has responded (Docket Entry No. 17). This action is before the undersigned for all further proceedings pursuant to the consent of the parties and the District Judge in accordance with 28 U.S.C. § 636(c) (Docket Entry No. 24).

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion is **DENIED**, and the decision of the Commissioner is **AFFIRMED**.

**I. INTRODUCTION**

Plaintiff filed an application for a period of disability and DIB on June 27, 2008. *See* Transcript of the Administrative Record (Docket Entry No. 10), at 19, 61-62, 101.[2] She alleged a

---

[1] Plaintiff states in her brief that the Commissioner also determined that she was not entitled to Supplemental Security Income ("SSI"), although there is no other indication in the record that Plaintiff applied for SSI.
[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in large black print on the bottom right corner of each page. All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

1

disability onset date of February 16, 2007. AR 37, 61-62. Plaintiff asserted that she was unable to work because of fibromyalgia, carpal tunnel syndrome, bursitis, pain and numbness in multiple body areas, back pain, arthralgia, concentration problems, memory problems, and bipolar disorder. AR 61-62, 66, 156.

Plaintiff's applications were denied initially and upon reconsideration. AR 61-66, 68-69. Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Todd Spangler on August 31, 2010. AR 33. On September 27, 2010, the ALJ denied the claim. AR 16-27. On March 27, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on September 27, 2010. AR 16. Based upon the record, the ALJ made the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2009.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of February 16, 2007 through her date last insured of December 31, 2009 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: fibromyalgia, bursitis, carpal tunnel syndrome, and bipolar disorder (20 CFR 404.1520(c)).

***
4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

***
5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform

2

medium work as defined in 20 CFR 404.1567(c) except that she is limited to occasional handling and fingering; can only perform unskilled work; can only have occasional contact with the public, coworkers, and supervisors; and cannot work in an environment requiring production-paced work.

\*\*\*

6. Through the date last insured, the claimant was capable of performing past relevant work as a parking lot attendant. This work did not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

\*\*\*

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from February 16, 2007, the alleged onset date, through December 31, 2009, the date last insured (20 CFR 404.1520(f)).

AR 21-27.

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th

Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

The claimant has the ultimate burden of establishing an entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's

age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra; Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. *Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and

5

nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra.*

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428. 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

**C. The ALJ's Five-Step Evaluation of Plaintiff**

In the instant case, the ALJ resolved the Plaintiff's claim at step four of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 21-22. At step four, the ALJ found that Plaintiff was able to perform past relevant work as a parking lot attendant (AR 25), thus resulting in a finding of "not disabled." Despite this finding, the ALJ proceeded to step five for alternative findings, at which point the ALJ found that Plaintiff's RFC allowed her to perform medium work as defined in 20 C.F.R. 404.1567(c), except she is limited to occasional handling and fingering, can only performed unskilled work and have occasional contact with the public, coworkers, and supervisors, cannot work in an environment requiring production-paced work, and that considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the regional and national economy that Plaintiff can perform. AR 25-27.

**D. Plaintiff's Assertions of Error**

Plaintiff argues that the ALJ erred by: (1) failing to discuss the medical records from Dr. Christian Vissers, M.D. and Leigh Powers, MSN; and (2) making a conclusory finding that Plaintiff's impairments did not meet a listed impairment. DE 14 at 5, 9.[3] Plaintiff therefore requests that this case be reversed and judgment entered in favor of Plaintiff pursuant to sentence four of 42 U.S.C. § 405(g), or, alternatively, remanded for rehearing. *Id.* at 15.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

---

[3] Plaintiff lists five separate assertions of error (DE 14 at 5-15), although the first four pertain to the medical records of Dr. Vissers and Ms. Powers. The Court will therefore address all of these as part of the first assertion of error. *Id*. at 5.

7

42 U.S.C. § 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). Plaintiff's assertions of error are addressed below.[4]

**1. Whether the ALJ erred by failing to discuss the medical records involving Plaintiff's treatment with Dr. Christian Vissers and Leigh Powers, MSN.**

Plaintiff contends that the ALJ committed reversible error by failing to mention the medical opinions of Dr. Vissers and Ms. Powers, which she claims violates the mandate found in SSR 96-5p that the ALJ weigh medical source statements and "provid[e] appropriate explanations for accepting or rejecting such opinions." DE 14 at 8. Plaintiff argues that this failure also violates the provisions of 20 C.F.R. § 404.1527 that require the ALJ to provide "good reasons" for the weight given to the opinion of the treating physician. DE 14 at 5-6.[5] Plaintiff similarly argues that the ALJ's failure to discuss these records violates SSR 96-2p, which requires that the adjudicator provide "specific reasons for the weight given to the treating source's opinion[.]" Plaintiff thus effectively contends that Dr. Vissers and Ms. Powers represent treating sources under the provisions of the Act.[6]

---

[4] See n.3.
[5] Plaintiff actually cites 20 C.F.R. § 416.927, which addresses applications for Supplemental Security Income ("SSI"). Because Plaintiff has not applied for SSI, the Court refers to 20 C.F.R. § 404.1527, which is the equivalent regulation pertaining to applications for DIB.
[6] Plaintiff explicitly claims that Ms. Powers is a "treating physician" later in her brief. DE 14 at 14.

Despite Plaintiff's argument, the Court does not agree that Dr. Vissers and Ms. Powers qualify as "treating sources" under 20 C.F.R. § 404.1527. Plaintiff cites just two office visits in support of her argument that Dr. Vissers represents a treating source. DE 14 at 6. The Court notes that Plaintiff was referred to Dr. Vissers by Dr. Melissa Hixson, who is identified in the record as Plaintiff's primary care physician. AR 509, 523. Dr. Vissers, an orthopedic surgeon, saw Plaintiff on these two occasions for evaluation of alleged pain in the lower back and left hip. AR 509. The note from the second visit indicates that Dr. Vissers referred Plaintiff for an MRI with instruction for follow-up care after the MRI was completed. AR 508. There is no indication, however, that Plaintiff received any additional treatment from Dr. Vissers. The Sixth Circuit has noted that, "depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006). Plaintiff does not contend that she treated with Dr. Vissers beyond these two visits in 2007. AR 508-09.

Additionally, and more importantly, Dr. Vissers has not provided an opinion regarding the severity of Plaintiff's alleged condition that would necessitate further scrutiny by the ALJ. Not surprisingly, Plaintiff's brief fails to identify a specific opinion from Dr. Vissers that she claims was disregarded by the ALJ. In fact, Plaintiff fails to discuss any of the treatment provided by Dr. Vissers. She instead contends that the ALJ's decision should be reversed on procedural grounds. However, the Sixth Circuit has noted that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result." *Kornecky*, 167 F. App'x at 507 (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)). In the most recent note, Dr. Vissers assessed Plaintiff with bursitis, low back pain without evidence of neural

impingement, and "possible" peripheral neuropathy. AR 508. There is no opinion in this note regarding any functional limitations caused by this diagnosis, and thus nothing that might lead the ALJ to a different conclusion regarding Plaintiff's condition.

20 C.F.R. § 404.1527(c) clearly states: "We will always give good reasons . . . for the weight we give to your treating source's *opinion*" (emphasis added). The mere diagnosis of an impairment "says nothing about its severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). *See also Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.") (internal citation omitted). Here, Dr. Vissers provided no opinion regarding the severity of any condition. Dr. Vissers instead provided one definitive diagnosis (bursitis), one possible diagnosis (peripheral neuropathy),[7] and identified a symptom (low back pain). She then referred Plaintiff for an MRI of her lumbar spine and a set of rheumatology labs to identify the causes of Plaintiff's low back pain and neuropathy, respectively. AR 508. Plaintiff's argument that the ALJ violated SSR 96-5p, which holds that adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 404.1527 . . . ," is therefore inapplicable as there is no such medical source statement to weigh in this matter. Moreover, even if it is accepted that Dr. Vissers' diagnosis of bursitis represents an "opinion" under 20 C.F.R. § 404.1527(c), the ALJ determined that this condition represented a severe impairment. AR 21.

Plaintiff's argument that the ALJ violated SSR 96-2p by failing to discuss the opinion of Nurse Leigh Powers also fails because Ms. Powers represents an "other source" that is not considered an "acceptable medical source." *See* 20 C.F.R. § 404.1513(d). This is significant because only acceptable medical sources can provide medical opinions and be considered

---

[7] Dr. Vissers also indicated that her diagnosis of "possible" peripheral neuropathy was based solely on Plaintiff's subjective complaints, as she could not detect any focal neurologic deficit. AR 508.

10

treating sources, and only opinions from acceptable treating sources may be accorded controlling weight. SSR 06-03p, 2006 WL 2329939, at *2. *See also Swafford v. Colvin*, No. 3:12-cv-00614, 2015 WL 1931438, at *8 (M.D. Tenn. Apr. 28, 2015) (Holding that a treating nurse "is not an acceptable medical source, and so her assessment is not due any particular deference or procedural protection."). Therefore, Plaintiff's argument that Ms. Powers represents a "treating source" under 20 C.F.R. § 404.1527 and SSR 96-2p is without merit.

Plaintiff further argues that the ALJ's failure to discuss the records from LifeCare Family Services ("LifeCare") documenting her treatment with Ms. Powers represents reversible error because the ALJ's finding that Plaintiff is only moderately impaired with respect to social functioning "is thoroughly inconsistent with the GAF score assigned to [Plaintiff] by LifeCare[.]"[8] DE 14 at 6. This argument also fails for multiple reasons.

Plaintiff claims, without citation to the record or any other source, that the "longitudinal record of [Plaintiff's] global assessment of functioning score ("GAF") shows a drop in her functioning which takes her from a serious impairment to a *marked* impairment." *Id*. (emphasis in original). However, this is not an accurate representation of the relevant metric. A GAF score between 41 and 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Kornecky*, 167 F. App'x at 503 (quoting *DSM–IV–TR* at 34 (capitalization and boldface omitted)). A GAF score between 51 and 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id*. The record indicates that Plaintiff was assigned a GAF

---

[8] Although Plaintiff fails to cite or discuss the "moderately impaired" finding, the Court assumes that Plaintiff is referring to the ALJ's statement that, "[i]n social functioning, the claimant had moderate difficulties." AR 22.

score of 51 at LifeCare on numerous occasions (AR 300, 302, 304, 306, 308), and a range of GAF scores in the 40s during other sessions. AR 414, 417, 420, 512-22. There is no indication that Plaintiff was assigned a GAF score demonstrating "marked impairment," as there is no designation of "marked impairment" based on a GAF score.[9] *See DSM–IV–TR* at 34. Furthermore, as discussed in greater detail below, there is no evidence that an acceptable medical source ascribed a GAF score to Plaintiff at any time during her treatment at LifeCare.

The Sixth Circuit has noted the following with respect to GAF scores: "[T]he Commissioner has declined to endorse the [GAF] score for use in the Social Security and SSI disability programs, and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorders listings." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007) (internal citations and quotations omitted). The Sixth Circuit has also held that "the failure to reference a [GAF] score is not, standing alone, sufficient ground to reverse a disability determination." *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). *See also Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 474 (6th Cir. 2013) ("[T]he ALJ was not required to consider [Plaintiff's] GAF scores . . . and, in any case, the scores were not sufficient to undermine the ALJ's analysis.") (internal citations omitted). Moreover, there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Adams v. Comm'r of Soc. Sec.*, No. 4:13-CV-22, 2014 WL 3368692, at *11 (E.D. Tenn. July 9, 2014) (quoting *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002)). Thus, the ALJ was not required to discuss the GAF scores assigned to Plaintiff at LifeCare.

---

[9] Plaintiff appears to conflate the GAF designations with the paragraph B criteria contained in Listing 12.04, which describe an individual who has "[m]arked restriction of activities of daily living," "[m]arked difficulties in maintaining social functioning," or "[m]arked difficulties in maintaining concentration, persistence, or pace." 20 CFR Part 404, Subpart. P, Appendix 1 § 12.04. Indeed, later in her brief Plaintiff argues that she meets Listing 12.04 based on these criteria. DE 14 at 13.

It is undisputed that the ALJ failed to discuss the records pertaining to Plaintiff's treatment with Ms. Powers. The Court agrees with Defendant, however, that this lack of discussion represents harmless error. The ALJ discussed Plaintiff's alleged mental impairments in the opinion, including the findings of multiple acceptable medical sources. AR 23-25. Plaintiff emphasizes the significance of the GAF scores assigned by Ms. Powers (DE 14 at 6-7), but points to no authority that requires the ALJ to consider a GAF score in his decision. *See Kornecky*, 167 F. App'x at 511 ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place."). Plaintiff's position is further undermined by the fact that the GAF scores were not provided by an acceptable medical source.

Additionally, even if Ms. Powers represented an acceptable medical source, there are no opinions contained in her records that the ALJ could have discussed or analyzed in the opinion. The records simply identify Plaintiff's diagnoses, including a primary diagnosis of bipolar disorder (AR 512), which the ALJ determined to be a severe impairment (AR 21), followed by Ms. Powers' "clinical observations" that simply document the Plaintiff's complaints. AR 512-22. During the last documented visit with Ms. Powers, such observations included Plaintiff's complaint of "difficulty with coping with dysfunctional people in her life," and her ability to "complete her own [activities of daily living] without assistance." AR 512. These observations do not establish a medical opinion regarding severity, nor any functional limitations associated with Plaintiff's alleged condition.

Only an acceptable medical source can provide a medical opinion that establishes the existence of a medically determinable impairment. SSR 06-03p, 2006 WL 2329939, at *2. Plaintiff points to two visits with Dr. Vissers as evidence in support of her argument, but these

records do not include an opinion as to the severity of Plaintiff's alleged condition. Plaintiff also relies on multiple "medication management" visits with Ms. Powers, AR 512-22, but these records similarly lack an opinion regarding the severity of Plaintiff's alleged condition. Additionally, Ms. Powers is not an acceptable medical source, and therefore no opinion she might have had is entitled to any special consideration. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) ("[O]ther-source opinions are not entitled to any special deference."). While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that he can consider all of the evidence without directly addressing in his written decision every piece of evidence submitted by a party. *Kornecky*, 167 F. App'x at 507-08 (internal citation omitted). Accordingly, the Court finds that the ALJ's failure to discuss the records of Dr. Vissers and Ms. Powers represents harmless error.

**2. The ALJ's finding that Plaintiff's impairments did not meet or equal Listing 12.04.**

Plaintiff next argues that the ALJ improperly failed to find that Plaintiff's alleged condition met Listing 12.04, which involves affective disorders. Plaintiff focuses her argument on the paragraph B criteria contained in Listing 12.04, stating that she "experienced marked difficulties in activities of daily living, social functioning as well as marked deficiencies in persistence and pace." DE 14 at 13. Plaintiff faults the ALJ's reliance on the opinion of Dr. Robert de la Torre, who performed a psychological evaluation in September of 2008 and found only mild to moderate difficulties in these areas (AR 396), because Dr. de la Torre "only examin[ed] [Plaintiff] once, for less than one hour[.]" DE 14 at 13. Plaintiff attempts to rebut the findings of Dr. de la Torre by reciting portions of the record documenting her treatment at LifeCare.

After recounting much of her treatment at LifeCare, Plaintiff returns to her previous argument that the ALJ failed to give controlling weight to Plaintiff's "treating physicians," Holly Barruso, Melinda Stahley, and Leigh Powers. DE 14 at 14. Plaintiff points to the decision in *Johnson v. Comm'r of Soc. Sec.*, in which the Sixth Circuit reversed the Commissioner's ruling based on the ALJ's mischaracterization and ultimate rejection of the opinion of the subject claimant's treating physician, Dr. Emily Rayes-Prince. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646 (6th Cir. 2011). Plaintiff incorrectly argues, however, that the scenario in *Johnson* is analogous to her claim. In *Johnson*, the Sixth Circuit noted that the ALJ's stated reasons for rejecting the opinion of Dr. Rayes-Prince were "simply inaccurate." *Johnson*, 652 F.3d at 652. The Sixth Circuit also noted that in addition to being a licensed physician and acceptable medical source, Dr. Rayes-Prince was a specialist with respect to the claimant's alleged medical condition, and that opinions from specialists are given more weight than those provided by non-specialists. *Id*. at 651.

Conversely, as previously discussed, Plaintiff has not presented a medical opinion from an acceptable medical source. Neither Holly Barruso nor Melinda Stahley is an acceptable medical source under 20 C.F.R. § 404.1513, despite Plaintiff's numerous references to "Dr. Holly Barruso" and "Dr. Melinda Stahley" in her brief. DE 14 at 10-11, 14. Plaintiff's brief also refers to Ms. Stahley as her treating "psychiatrist" (*Id*. at 10), and Ms. Barruso as "Dr. Holly Barruso, MD[.]" *Id*. at 14. Despite these references, Ms. Barruso has specifically identified herself as a therapist, not a medical physician. AR 311. Additionally, there is no evidence in the administrative record indicating that Melinda Stahley has identified herself as a physician. Plaintiff cites just two notes documenting Plaintiff's interactions with Ms. Stahley: one on April 29, 2008, during which Plaintiff underwent "Therapy/Med[ication] Management"

(AR 344), and one on May 21, 2008, during which Plaintiff was seen for "Medication Management." AR 356. Both notes contain a digital signature that reads, "Provider: Melinda Stahley." AR 346, 356. None of her records characterize her as a medical physician. In contrast, every signature from a medical physician in the administrative record includes the designation, "M.D." following the physician's name. AR 315, 323, 376, 383, 391, 409-10, 442, 444, 447, 456-57, 473, 487-88, 503, 508, 527-32. While the Court assumes Plaintiff's misidentification of Ms. Stahley and Ms. Barruso was unintentional, it is necessary to make this distinction for purposes of evaluating Plaintiff's argument under the relevant regulations.

Notwithstanding this mislabeling, Plaintiff argues that the LifeCare records demonstrate "marked difficulties" in her activities of daily living, social functioning, and mental functioning. DE 14 at 13. Plaintiff effectively claims that these records outweigh the opinion of Dr. de la Torre, a clinical psychologist, who stated the following after finding that Plaintiff suffered from bipolar disorder and alcohol abuse:

> [Plaintiff's] psychiatric disorder is likely to cause: mild difficulties in understanding, remembering, and carrying out short, simple instructions accurately; mild to moderate difficulties in remembering and carrying out detailed instructions accurately, interacting appropriately and communicating effectively with others, and performing daily routine activities; and moderate difficulties in coping with stressful situations and adjusting to change.

AR 396. This opinion was given "considerable weight" by the ALJ. AR 25. Plaintiff notes that the ALJ did not specifically discuss the portions of Dr. de la Torre's report involving her activities of daily living. DE 14 at 12. This is immaterial, however, as the ALJ clearly reviewed Dr. de la Torre's report and discussed his findings at length in the opinion. AR 23-25. Furthermore, as noted by Defendant, an ALJ is not required to discuss all of the evidence submitted, and his failure to cite specific evidence does not indicate that it was not considered.

*Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) (internal citation omitted).

Nevertheless, Plaintiff argues that the opinions of the LifeCare providers, including Ms. Barruso, Ms. Stahley, and Ms. Powers, should have been given more weight because such providers treated Plaintiff "dozens of times" for over a year. DE 14 at 14. However, as previously discussed, none of the providers at LifeCare represents an acceptable medical source. The Sixth Circuit has stated that the opinion of an "other source," which describes all of the providers with whom Plaintiff treated at LifeCare, cannot be given controlling weight. *Hill*, 560 F. App'x at 550. This rule notwithstanding, even if these providers were considered acceptable medical sources, Plaintiff fails to identify a medical opinion that details the functional impact of her alleged conditions. She instead lists her symptoms as described to her various LifeCare providers. DE 14 at 9-14. Plaintiff's brief cites two notes documenting her "Therapy/Med[ication] Management" visits with Ms. Stahley (AR 344, 356), but she simply recites her own statements to Ms. Stahley regarding her emotional stability. DE 14 at 10. Notably, none of the records documenting Plaintiff's three visits with Ms. Stahley includes an opinion as to any functional limitations. AR 344-46, 356, 363-64. Further, as noted by Defendant, Ms. Stahley's records only include diagnoses that do not contradict the findings of the ALJ. DE 17 at 18-19.

Plaintiff additionally points to a June 5, 2008 letter from Ms. Barruso, which provides a vague assessment as to the impact of her impairment:

> In addition to her emotional issues, [Plaintiff] also suffers from Chronic Pain which has exacerbated her depression and impeded her ability to maintain steady employment. This has caused significant financial stress and she recently lost her home, having to move back in with family until her situation is stabilized. Her medical condition also limits her mobility and restricts her social activity and

> family life, thus she is socially isolated and lacks motivation to participate in social/recreational activities.

AR 311. As discussed by the ALJ, Ms. Barruso suggests that Plaintiff is unable to work due to a combination of physical and mental disabilities. AR 24. However, such a determination as to a claimant's functional capacity to do work is reserved for the ALJ, not a medical provider. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 432(d)(5)(B)). *See also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009) ("Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner."). Moreover, Ms. Barruso's statement that "[c]hronic [p]ain . . . has exacerbated [Plaintiff's] depression and impeded her ability to maintain steady employment" represents a conclusory statement that provides no insight as to how Plaintiff is actually limited. *See Hill*, 560 F. App'x at 551 ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."). *See also Carney v. Colvin*, No. 3:12-CV-00744, 2015 WL 5089783, at *8 (M.D. Tenn. Aug. 17, 2015) (Upholding ALJ's decision to discount opinion of examining physician based on a conclusory assertion of claimant's inability to work that "fail[ed] to give specifics as to what actual limitations were imposed on [claimant's] functional ability."). As such, the Court finds no error in the ALJ's decision to give little weight to this opinion. AR 24.

A claimant's condition may or may not affect her functional capacity to do work; one does not necessarily establish the other. *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (internal citation omitted). In the first four steps of the evaluation process contemplated by 20 C.F.R. § 404.1520, including the requirement at step three that the ALJ determine whether a claimant's impairment meets or medically equals a listed impairment, it is the claimant's burden to prove the existence and severity of limitations caused by her alleged

impairments. *Jones*, 336 F.3d at 474. Here, Plaintiff fails to identify any opinion from an acceptable medical source to support her claim that she is functionally unable to do work, let alone her suggestion that her impairments meet the requirements of the paragraph B criteria of Listing 12.04. The Court therefore finds that substantial evidence supports the ALJ's determination that Plaintiff's condition does not meet Listing 12.04.

## V. CONCLUSION

For the above stated reasons, Plaintiff's motion for judgment on the administrative record (DE 14) is DENIED.

An appropriate Order will accompany this memorandum.

_____
BARBARA D. HOLMES
United States Magistrate Judge